[Philadelphia, April 3, 1841.]

## HICE *against* KUGLER.

### IN ERROR.

In an action by the owner of a canal boat against the steersman, whom he had employed
to take her down the river, to recover damages for the loss of the boat, which was car-
ried over a dam, in consequence of the negligence of the defendant, it was *held* that it
was not a sufficient answer to the charge of negligence that the boat was not properly
provided with poles and hands; if the vessel was improperly navigated too near the dam.

Error to the Court of Common Pleas of Northampton County.

John Kugler brought an action on the case in that court against
George A. Hice, to recover damages for alleged misconduct on the
part of the defendant, who had been employed by the plaintiff as
steersman of a boat belonging to the plaintiff, on the river Lehigh.

On the trial before Banks, (President) evidence was given on

(Hice *v.* Kugler.)

both sides respecting the conduct of the defendant in the management of the boat, the usages of the navigation, and other matters relating to the issue.

The learned judge charged the jury in substance as follows.

"The plaintiff employed the defendant as steersman to run his boat a trip down the Delaware. The boat lay in the Lehigh above the dam. The defendant undertook to take her across the Lehigh, and the current carried her over the dam, and she was much damaged. The plaintiff insists that this occurred through the negligence of the defendant, and has brought this action to recover her value in damages. The defendant insists that he had not taken charge of the boat when this occurred; that his employment was to run her down the Delaware; that she was not yet in the Delaware. You will decide what the engagement and contract were; and whether the defendant had taken charge of the boat. He gave directions to put the boat out into the water; and no one interfered with him as to the place or manner in which she should be run across the Lehigh. The plaintiff was not there at the time; so, that if you believe the evidence, no one but the defendant had charge or control in this matter at that time but the defendant.

Was the defendant guilty of negligence? You have heard all the evidence that has been given. Some have testified that it was not prudent to run a boat across at this place, stern foremost. You will take into consideration the place, the nearness to the dam, the manner in which the defendant attempted to take her over, stern foremost, and the height of the water. From all this you will determine whether it was prudent to attempt to run her over in this way, at this point, or whether it was not negligence of such a degree as that the defendant ought to answer for the damages done. The defendant was bound to use reasonable care, and employ an ordinary degree of skill. If he did not, he would be liable for the damages.

It is said by the defendant's counsel that the boat was not supplied with proper poles and hands at this time. The defendant made no objections to either at the time. If he had, and they had not been furnished, it might have been different. He undertook the task with them as they were; and the want of reasonable care and prudence would make him liable as for negligence.

The defendant's counsel insists that there has been a custom not to hold any one liable for a wreck on the Delaware. Such a custom would be strange enough. That none who had heretofore lost on the Delaware by the negligence of steersmen, has claimed damages, would not affect the plaintiff's claim, nor would it bind him, nor would it render the defendant less culpable, nor indemnify ·him against liability. The value of the boat would be the proper amount of damages, if the plaintiff has made out his case. The defendant is proved to have been a prudent man, and careful steersman ;

(Hice *v.* Kugler.)

and there is nothing in the case that would justify any thing like vindictive damages. You have evidence of the plaintiff saying that he blamed no one; and of his taking money from others to make up for his loss. You will give this its proper weight. If he then knew all the facts, it would go far to show that in his opinion the defendant had not been guilty of negligence.

If the defendant was guilty of negligence, the plaintiff is entitled to a verdict. If he was not, your verdict should be for the defendant."

A verdict having been given for the plaintiff, the defendant took this writ of error, and assigned the following errors.

" 1. The court erred in charging the jury that the want of proper poles and hands did not exempt the defendant from the charge of negligence.

2. The court erred in all they say respecting the custom of the river Delaware."

Mr. *A. E. Browne,* for the plaintiff in error, cited *Dusar* v. *Murgatroyd,* (1 *Wash. C. C. Rep.* 18.)

Mr. *Maxwell* and Mr. *Porter* contra, cited *Tracy* v. *Wood,* (3 *Mason,* 132.)

The opinion of the court was delivered by

GIBSON, C. J.—Actual negligence was made the turning point of the cause; and the direction in respect to the supposed consequences of the defendant's want of objection to the furniture and equipage of the boat, was subordinate to it, and immaterial. What matters a mistake about the consequences of a waiver of objection, when no objection would have excused the conduct which is the subject of the action. If the want of proper boat-poles would be no justification of positive neglect to take proper measures, and do the best with the means in hand, no misdirection in regard to a want of objection to the poles in the first instance, could prejudice the defendant, provided the event of the cause was made to depend on the evidence of such neglect. Negligence is misconduct; and it is impossible to imagine a default on the other side, which could justify or excuse it. Would a choice of the more perilous route be justified by the deficiency of a vehicle unfit for either; or would the intractability of the horses, justify the drawing of a stage-coach through a river in preference to conducting it over a bridge? It would be absurd to answer in the affirmative. If, by reason of attempting to pass the boat across the river at a place where, with the means at command, disaster was inevitable, the loss in this instance was occasioned by carelessness, or a blunder so gross as to be a breach of the implied stipulation for reasonable skill, no excuse for it could be found in the want of poles proper for an extraordinary occasion, though the danger

(Hice v. Kugler.)

might have been successfully met had they been furnished. Why meet it at all when it might as easily have been avoided? As the passage across the stream might have been made with obvious safety at a point higher up, where the force of the current could not have been felt, or, if felt, would have been easily resisted, such a part ought to have been selected. That there was a wanton exposure to a force disproportionate to the means of resisting it, could not be doubted. The attempt to run the boat across, deeply laden as it was, not only at a place within the immediate and powerful attraction of the overfall, but also stern foremost, was a flagrant violation of common prudence and common sense. What avails it then that in an emergency, thus recklessly produced, the catastrophe might have been averted by the use of iron-pointed poles, when the production of the catastrophe was itself an act of negligence? In *Hart* v. *Allen,* (2 *Watts,* 121,) it was said, in analogy to the doctrine of insurance, that the sufficiency of the equipage is not to be measured by the exigencies of a crisis, but by its sufficiency to conduct the vessel safely to the place of its destination in the absence of extraordinary accidents; and the want of preparation for such a crisis can consequently still less justify a wanton or negligent exposure to the perils of it. I grant that an undertaking to navigate a vessel inadequately furnished, would not subject the party to liability for losses occasioned by such inadequacy, independent of his own misfeasance; but that is not the case disclosed by the evidence; and the propriety of the direction must be determined by the nature of the resulting facts to which it was to be applied. Negligence was made the turning point of the cause; and it was properly given in charge that an unnecessary attempt to pass at an improper place was evidence of it—a position equally tenable whether the equipage of the boat had passed without objection or not. If, then, a deficiency of means will not justify a misapplication of the means in the party's power, of what account is it that there may have been a misapprehension in regard to a want of objection for such deficiency? The question turned on the point of actual misfeasance; and on the evidence of that the jury were directed to decide it.

Judgment affirmed.